Holley agt. Townsend.

## NEW-YORK COMMON PLEAS.

PHILOLOGOS HOLLEY agt. HENRY D. TOWNSEND.

A man is not entitled to a *commission* from the owner, for informing a broker that certain lots are in the market, a purchaser for which is afterwards procured by the broker through such information.

And this is so, where the man had previously had a limited contract for a commission for the sale of the lots, and at its expiration informed the owner that he could do nothing with them.

A right to a commission must be founded upon contract expressed or implied.

*General Term*, 1858.

*Before* HILTON, DALY *and* BRADY, *Judges.*

THIS action was commenced by Philologos Holley to recover of Henry D. Townsend, a commission of one per cent., amounting to $150, for selling six lots on forty-seventh street. These lots are a portion of a row extending along the north side of forty-seventh street, from Broadway to Sixth avenue, pur-

Holley agt. Townsend.

chased by Mr. Bulkley, and on which he has since erected a row of large brown stone dwellings.

In September, 1856, immediately on his return from Europe, Mr. Townsend was called on by Byron M. Holley, a son of the plaintiff, who proposed to find him a purchaser for the lots, Mr. Townsend agreeing to pay him a commission if he did, and gave him by letter, until a certain Friday, to report whether he could do anything. Byron M. Holley called on the day fixed, and said he could do nothing with the lots.

In the following winter, another broker, John O'Higgins, called upon Mr. Townsend and negotiated for the lots. Mr. Townsend asked him if he intended to charge a commission. He replied that he did, upon which Mr. Townsend declined to sell the lots. O'Higgins called the next day and agreed to charge no commission, whereupon the sale to Mr. Bulkley was completed, and the contract signed.

This was in February, 1857. Mr. O'Higgins admitted on the trial, that he was acting in behalf of Mr. Bulkley, the purchaser, who had agreed to pay him a commission. He also testified that he had been informed about the lots by the plaintiff before he went to Mr. Townsend, and that he told Mr. Townsend that he came from Mr. Bulkley. This Mr. Townsend denied.

The plaintiff claimed to recover on the ground that the plaintiff was originally employed to sell the lots, and that O'Higgins, who actually effected the sale, obtained his information from him; that the sale was therefore effected by his agency.

The defendant insisted that the employment of the plaintiff . terminated when, on a day fixed, he reported he could do nothing with the lots; that there was no evidence that the plaintiff was the procuring cause of the sale; that if O'Higgins acted in any capacity for the plaintiff, the plaintiff was bound by his agreement to charge no commission.

On the trial judgment was given for the plaintiff, and the case was taken by appeal to the general term, where the judgment was reversed.

Holley agt. Townsend.

L. J. GOODALE, *for plaintiff.*
WM. R. MARTIN, *for defendant.*

HILTON, Judge.   In the fall of 1856, the defendant owned six lots on forty-seventh street in this city ; the plaintiff's son, Byron M. Holley, called to inquire their price, and to learn what commissions the defendant would give upon a sale.

The testimony is conflicting as to whether or not Byron M. Holley stated to the defendant that he came on behalf of the plaintiff, and it is quite evident from the letter of the defendant to Byron M. Holley, in 'evidence, that he, and not the plaintiff, was the person with whom the defendant supposed he was dealing.   This negotiation was finally ended by Byron M. Holley calling upon and informing defendant of the inability of Holley, or the party for whom he had acted, to purchase the lots.   The defendant was then justified in supposing that, as the negotiations entered upon by Holley had ceased, all obligations connected with, or incident to it, were at an end.

Some time after, a Mr. O'Higgins called on the defendant respecting these lots, having been informed of his ownership by Holley, (whether plaintiff or his son is not specified.) O'Higgins says that he distinctly told defendant when he called, that he came from Holley, and the defendant states directly the contrary.   But whether O'Higgins so stated or not, is quite immaterial, because he and the defendant agree as to what subsequently took place respecting the sale and commissions.·

Upon O'Higgins opening the conversation with the defendant respecting these lots, the defendant inquired whether commissions were to be charged him ; being answered in the affirmative, he at once declined to sell on the terms proposed.   O'Higgins then left, and as it appears from the testimony of the witness Day, having in the meantime secured his commissions from the purchaser, called the day after on the defendant, and agreed to take the lots and charge no commission.   This agreement was distinctly reiterated at the time defendant executed and delivered to O'Higgins the final contract

of sale, and in the presence of the subscribing witness Long. Under the circumstances, it seems difficult to understand upon what principle the defendant can be held liable to the plaintiff for commissions on this sale.

Long before its negotiation commenced, any contract which existed between the plaintiff and defendant respecting these lots, was put an end to by the mutual understanding of the parties to it, and throughout the interviews which terminated in the sale finally made, it was distinctly and expressly agreed between the defendant and O'Higgins, that no commission was to be expected or paid.

The judgment must, therefore, be reversed.

DALY, First Judge—Concurred, and gave the following opinion : I agree with Judge HILTON. Byron M. Holley testified that Townsend told him that the lots were for sale, and that he would pay a commission of one per cent. Townsend testified that he gave Byron M. Holley until Friday to see what he could do, upon which day he called and said he could do nothing with the lots. Before this point there is no conflict, and it is, I think, decisive of the case. Even if Byron M. Holley told Townsend that he came from the plaintiff, this must be construed as a contract to pay a commission, provided a purchaser was procured by the day fixed. On that day Byron M. Holley called, and told Townsend he could do nothing, and the employment was at an end. A sale was afterwards effected through O'Higgins, who obtained his commissions from the purchaser, Townsend having refused to pay him a commission. The plaintiff did not procure the purchaser ; he merely informed another broker that the defendant had the lots for sale, and that broker procured the purchaser and sought to get the defendant to pay him a commission for effecting the sale, which the defendant declined. There was no employment existing when plaintiff informed O'Higgins that the lots were for sale, and a man is not entitled to a commission from the owner for informing a broker that certain lots are in the market, a purchaser for which is afterwards procured by the broker. A

right to a commission must be founded upon a contract expressed or implied, and none existed between the defendant and the plaintiff when O'Higgins procured the purchaser.

The judgment should be reversed.

Judge BRADY delivered a dissenting opinion.

Judgment reversed.